**UNITED STATES v. CRUMMER et al.**

No. 3155.

Circuit Court of Appeals, Tenth Circuit.

Nov. 2, 1945.

Rehearing Denied Dec. 11, 1945.

Theodore L. Thau, Sp. Asst., of Washington, D.C. (Randolph Carpenter, U. S. Atty., and Eugene W. Davis, Asst. U. S. Atty., both of Topeka, Kan., Alexander J. Brown, Jr., Sp. Asst. U. S. Atty., of Chicago, Ill., and Roger S. Foster, Sol., Robert S. Rubin, Asst. Sol., and Alexander Cohen, Atty., Securities and Exchange Commission, all of Philadelphia, Pa., on the brief), for appellant.

Francis X. Busch, of Chicago, Ill., and W. F. Lilleston and Glenn Porter, both of Wichita, Kan. (R. B. Caldwell, of Kansas City, Kan., E. R. Sloan and Thomas M. Lillard, both of Topeka, Kan., and Harry C. Castor and Joseph G. Carey, both of Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Roy E. Crummer, nine other individuals, and two corporations were indicted in the United States court for Kansas under Section 215 of the Criminal Code, 18 U.S.C.A. § 338, which in presently material part provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, * * * writing, * * * in any post office, * * * to be sent or delivered by the post office establishment of the United States, * * * shall be fined not more than $1,000, or imprisoned not more than five years, or both."

It was alleged in the first count of the indictment that the defendants, from on or about January 1, 1931, and continuously thereafter up to and including the date of the return of the indictment, unlawfully devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and by omissions to state material facts, from certain named persons and divers others who were desirous of recovering their money and property theretofore invested in municipal bonds and other securities issued by Panama City, Florida.

It was then alleged that the scheme and artifice was in substance that the defendants would and did, from on or about January 1, 1931, and thereafter dominate and control Brown-Crummer Investment Company; that they would and did on May 1, 1931, organize, under a writing entitled bondholders' protective committee agreement, a bondholders' protective committee which would be under the domination and control of the defendants; that they would and did provide in the agreement that holders of any securities designated by the committee might become parties thereto by depositing their securities with Brown-Crummer Investment Company; that they would and did withhold from the persons to be defrauded information in respect to the terms of the agreement; that they would and did on September 1, 1931, amend the agreement so as to provide that by the deposit of a security with the committee, the depositor would be conclusively deemed to have transferred and conveyed to the committee every right against anyone whomsoever, whether fixed and determined or inchoate, and whether known or unknown to the depositor or the committee; that they would and did on May 1, 1934, organize R. E. Crummer and Company, a corporation, and thereafter dominated and controlled it; that from May 1, 1934, to December 31, 1938, Brown-Crummer Investment Company and R. E. Crummer and Company would carry on joint operations in the purchase, sale, trading and holding in trust of municipal bonds, including the obligations of Panama City, and that after December 31, 1938, the defendants would continue in the name of R. E. Crummer and Company all of such joint operations theretofore carried on in the name of the two corporations; that they would and did on November 10, 1942, organize and thereafter completely dominate and control The Crummer Company, a corporation; and that they would and did on or about January 1, 1943, and thereafter, continue and consummate all pending and incomplete negotiations, dealings, business affairs, and activities theretofore carried on in the name of R. E. Crummer and Company.

It was alleged as the further substance of the scheme that for the purpose of deceiving and misleading the persons to be defrauded and in order to induce them to part with their Panama City bonds, interest thereon not represented by coupons, and interest coupons, the defendants would and did make false and fraudulent pretenses, representations, and promises concerning the business of Brown-Crummer Investment Company and R. E. Crummer and Company, concerning their ability in representing and assisting the persons to be defrauded in obtaining payments on past due bonds and interest thereon issued by Panama City, concerning their negotiations with the officials of Panama City for payments to be made, concerning the prospects of recovery of money and property upon the bonds and interest obligations of the persons to be defrauded, and concerning the efforts and intentions of the defendants to effect an early refinancing of the obligations of Panama City; and that they would and did employ and retain a staff of salesmen and agents for the purpose of effecting frequent personal contacts with the persons to be defrauded and making to them numerous false and fraudulent statements, suggestions, and recommendations in order to obtain from such persons the custody and control of their Panama City bonds and interest obligations. It continued to allege as the further substance of the scheme that the defendants would and did compose, phrase, and arrange certain forms of powers of attorney and other writings designated as temporary representation agreements, and extensions thereof; that they would and did falsely and fraudulently induce the persons to be defrauded to sign and deliver to the defendants such representation agreements, together with their past due Panama City bonds and accrued interest thereon, and their past due interest coupons appurtenant to such bonds; that they would and did thereafter withhold from such persons information concerning the status, value, and disposition of such bonds and interest coupons appurtenant to them; that they would and did convert the interest obligations to their own use and benefit, to the loss and injury of the persons to be de-

frauded; that they would and did involve the bonds and interest thereon, and the interest coupons, obtained from the persons to be defrauded, in litigation in two specifically described cases in the United States Court in Florida; that they would and did obtain judgments in such cases; that they would and did collect from Panama City large sums of money and new refunding bonds on the judgment in one of the cases and large amounts of new refunding bonds on the judgment in the other case; that they would and did withhold from and fail to disclose to the persons to be defrauded information concerning the collection of such money and new refunding bonds; that they would and did fail and refuse to make accounting for such money and new refunding bonds; and that they would and did fraudulently convert to their own use and benefit a large part of such money and new refunding bonds, to the loss and injury of the persons to be defrauded.

It was charged as the further substance of the scheme that the defendants would and did on or about May 22, 1942, enter into an agreement with Panama City to refund the outstanding indebtedness of the city; that they would and did, upon the issuance of new refunding bonds, exchange the defaulted bonds and accrued interest thereon, and defaulted coupons, which they had acquired from the persons to be defrauded under the temporary representation agreements, and extensions thereof, for the new refunding bonds; and that they would and did fraudulently convert to their own use and benefit a large part of the money and property recovered by them from the persons to be defrauded and from officials of Panama City on behalf of the persons to be defrauded. In addition, it was charged as the further substance of the scheme that the defendants would and did falsely and fraudulently represent, pretend, and promise to the persons to be defrauded that the defendants would collect money due to such persons on their bonds and interest coupons, and would represent such persons in any legal actions at a cost to them of five per cent of the amount collected on principal and ten per cent of the amount collected on interest, when in truth and in fact they did not intend to represent such persons on that basis, but, on the contrary, they dealt with and used such bonds and accrued interest as their property and for their own benefit; and that they would and did in one of the described cases in the United States Court

in Florida obtain judgment in the amount of $247,480.94, upon which judgment they collected $75,643.20 in cash and in addition thereto $241,605.55 in the form of new refunding bonds, converted to their own use and benefit a large part of such cash and a large part of such bonds, and withheld from the persons to be defrauded information in respect of the judgment and the collection thereon.

And it was charged as the further substance that the defendants would and did falsely represent to the persons to be defrauded that if all holders of Panama City original bonds had demanded the original coupon rate of six per cent, the refunding program would never have been able to operate, as the city could not possibly have produced sufficient funds with which to meet the obligation, whereas in truth and in fact, as the defendants well knew, the payment of the original rate by the city would not and did not affect the operation of the refunding program; that they would and did represent that the officials of the city were making funds available to cover the liquidation at the rate of two per cent of certain coupons bearing five, six, and seven per cent, respectively, up to a certain date, and to cover the liquidation at the rate of three per cent of defaulted coupons bearing five, six, and seven per cent, respectively, up to later dates, whereas in truth and in fact the officials were not making funds available for that purpose, but, on the contrary, the liquidation was effected with funds provided by the defendants; and that the defendants would and did in 1939 represent and pretend to the persons to be defrauded that the exchange of Panama City original bonds and refunding bonds of the city had begun but had not been completed, that it was necessary that the past due bonds be deposited with the defendants in order that interest payments might be endorsed on them, and that in truth and in fact, as the defendants well knew, no exchange of such bonds would be or was begun or completed in the year 1939, and it was unnecessary that the bonds be sent to the defendants for endorsement thereon of interest payments.

Finally, it was charged that for the purpose of executing and attempting to execute the scheme a described letter was on April 29, 1942, placed in the post office at Wichita, Kansas, to be sent and delivered to the addressee.

The other counts each charged the same scheme but similarly a separate and distinct

use of the mails for the purpose of executing or attempting to execute it.

Demurrers were lodged against the indictment. The grounds of demurrer were broadly that the indictment and each count thereof was vague, indefinite, ambiguous, and uncertain; that it failed to allege facts sufficient to inform the defendants of the nature of the charges and accusations; that it was duplicitous; and that none of the letters or writings charged to have been sent through the mails was designed, calculated, or purposed to execute the scheme. The demurrers were sustained and the indictment dismissed. The United States appealed.

■ The Sixth Amendment to the Constitution of the United States provides among other things that in all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation. And by settled rules of criminal pleading, a defendant is informed of the nature and cause of the accusation against him if the indictment charges all of the essential elements of the offense with sufficient completeness and clarity to apprise him of the crime charged with such reasonable certainty as will enable him to make his defense and to plead the judgment of acquittal or conviction in bar to a future prosecution for the same offense. Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830; Cochran and Sayre v. United States, 157 U.S. 286, 15 S.Ct. 628, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 16 S. Ct. 434, 480, 40 L.Ed. 606; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L. Ed. 1057, 6 Ann.Cas. 362; Bartell v. United States, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583; United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Butler v. United States, 10 Cir., 53 F.2d 800; Weber v. United States, 10 Cir., 80 F.2d 687; Crapo v. United States, 10 Cir., 100 F.2d 996; Graham v. United States, 10 Cir., 120 F.2d 543; Travis v. United States, 10 Cir., 123 F.2d 268; Rose v. United States, 10 Cir., 128 F.2d 622, certiorari denied 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524; United States v. Armour & Co., 10 Cir., 137 F.2d 269.

■ Where a statute creating an offense sets forth fully, directly, and expressly all of the essential elements necessary to constitute the crime intended to be punished, it is sufficient if the indictment charges the offense in the words of the statute. But where the statute is in general terms and does not set out expressly and with certainty all of the elements necessary to constitute the offense, the indictment must descend to particulars and charge every constituent ingredient of which the crime is composed. United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135; United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516; Blitz v. United States, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725; Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419; Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505; Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681. And in determining the sufficiency of an indictment challenged by demurrer for being objectionably vague, indefinite, ambiguous, and uncertain, the whole thereof must be taken into consideration. Paragraphs or other parts are not to be segregated, set apart, and viewed alone without reference to other pertinent parts. All relevant parts must be brought into focus and considered in their totality. United States v. Armour & Co., supra.

■ The offense charged in the indictment is composed of two constituent elements. They are a scheme devised or intended to be devised to defraud, or for obtaining money or property by false or fraudulent pretenses, representations, or promises, and the use of the mails for the purpose of executing the scheme or attempting to do so. In other words, to constitute the offense a scheme to defraud must be devised and thereafter a letter, postal card, package, writing, circular, pamphlet, or advertisement must be placed in the mails for the purpose of executing the scheme, or attempting to do so. United States v. Young, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548; Havener v. United States, 10 Cir., 49 F.2d 196, certiorari denied 284 U.S. 644, 52 S.Ct. 24, 76 L.Ed. 547; Rude v. United States, 10 Cir., 74 F.2d 673; Stryker v. United States, 10 Cir., 95 F.2d 601; Graham v. United States, supra.

■ The crime has its genesis in the scheme to defraud, but the very gist of it is the use of the mails in executing the scheme or attempting so to do. Rosenberg v. United States, 10 Cir., 120 F.2d 935; Gates v. United States, 10 Cir., 122 F.2d 571, certiorari denied 314 U.S. 698, 62 S.Ct. 483, 86 L.Ed. 558; Mitchell v. United States, 10

Cir., 142 F.2d 480, certiorari denied 323 U.S. 747, 65 S.Ct. 49; Rice v. United States, 10 Cir., 149 F.2d 601; Weatherby v. United States, 10 Cir., 150 F.2d 465. While the particulars of the scheme are matters of substance and therefore must be described with a degree of certainty sufficient to show its existence of character, and fairly to acquaint the defendant with the particular fraudulent scheme charged against him, still the scheme itself need not be pleaded with all the certainty in respect of time, place, and circumstance requisite in charging the mailing of the letter or other matter. Havener v. United States, supra; Rude v. United States, supra; Redmond v. United States, 1 Cir., 8 F.2d 24; Wheeler v. United States, 9 Cir., 77 F.2d 216, certiorari denied 295 U.S. 765, 55 S.Ct. 927, 79 L.Ed. 1707; Hass v. United States, 8 Cir., 93 F.2d 427; United States v. Lowe, 7 Cir., 115 F.2d 596, certiorari denied, 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466; Leche v. United States, 5 Cir., 118 F.2d 246, certiorari denied 314 U.S. 617, 62 S.Ct. 73, 86 L.Ed. 496. And where the scheme is set out in the indictment substantially in that manner but the defendant is entitled to further identification or specification, his remedy is to apply for a bill of particulars. Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709; Cf. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

■ Bearing in mind the principles enunciated in the foregoing cases, we think the indictment was not open to attack by demurrer for being fatally vague, indefinite, ambiguous, and uncertain. At the beginning of the first count it was charged that, from a certain date up to and including the date of the return of the indictment, the defendants unlawfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises. It charged that those to be defrauded were the persons, corporations, and institutions desiring to recover money and property which they had invested in municipal bonds and other securities issued by Panama City. It named more than twenty of such persons, corporations, and institutions, and charged that there were divers others to the grand jury unknown. It then set out the substance of the scheme. And in conclusion, it charged that, having devised or intending to devise the scheme, and for the purpose of executing or attempting to execute it, the defendants placed or cause to be placed in the post office a fully described letter, the date and place of the mailing being specifically set out. The succeeding counts each charged that the defendants, having devised and intending to devise the scheme set out in the first count, placed or caused to be placed in the mails a different letter or writing for the purpose of executing or attempting to execute the scheme. And in each of such counts, the time and place of mailing, as well as the substance of the letter or writing was pleaded with like detail. In respect of charging the substance of the scheme, perhaps the indictment could have been stripped of some of its allegations; perhaps additional allegations of elaboration or detail as to certain acts and occurrences in their relation to each other would have contributed to clarity; and perhaps it could have been improved in the matter of chronology and other arrangement of the allegations. But that is not the test. Taking into consideration all parts of the indictment, looking to the allegations in some parts as an aid in understanding the allegations in other parts, and placing a reasonable interpretation upon the allegations in several parts, and in the whole, it seems clear that the indictment and each count thereof charged the essential elements of the offense with sufficient fullness, clarity, and particularity to advise the defendants of the nature of the offense, to enable them to prepare their defense, and to enable them to plead the record and judgment of acquittal or conviction in bar to a later prosecution for the same offense. But if they were entitled to further specification or identification in respect of the substance of the scheme, their remedy was to make application for a bill of particulars. Durland v. United States, supra; Cf. Glasser v. United States, supra.

■ Coming to the question whether the indictment was duplicitous, it is well settled that duplicity in criminal pleading is the joinder of two or more separate and distinct offenses in the same count in an indictment or information, not the charging of a single offense involving a multiplicity of ways and means of action and procedure. The offense charged in each count of this indictment was the devising of a scheme to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, and of using the mails for the purpose of executing the scheme or at-

tempting so to do. It was a single offense, consisting of those two elements. The scheme, as laid in the indictment, involved a multiplicity of ways and means of action and procedure, but it was a single scheme. And setting out the numerous ways and means of action and procedure included in the scheme for its accomplishment did not render the indictment duplicitous. Gourdain v. United States, 7 Cir., 154 F. 453; Sunderland v. United States, 8 Cir., 19 F.2d 202; Weiss v. United States, 5 Cir., 122 F.2d 675, certiorari denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550; United States v. MacAlpine, 7 Cir., 129 F.2d 737.

Next comes the question whether the indictment was subject to demurrer because it showed on its face that none of the letters or writings alleged to have been placed in the mails was intended to be or was in execution of the scheme to defraud. In a case of this kind the letter or other writing set out in the indictment must have had some relation to the scheme and it must have been deposited in the mail with the intent of assisting in carrying the scheme into effect. Barnes v. United States, 8 Cir., 25 F.2d 61, certiorari denied 278 U.S. 607, 49 S.Ct. 12, 73 L.Ed. 533; United States v. Berg, 3 Cir., 144 F.2d 173. But it is not necessary that the letter or writing disclose on its face that it was related to the scheme. Barnes v. United States, supra; Muench v. United States, 8 Cir., 96 F.2d 332. It is enough to allege in the indictment that it was mailed in the execution of the scheme, unless the letter or writing clearly shows on its face that it probably could not have had any effect in the furtherance of the scheme. Stewart v. United States, 8 Cir., 300 F. 769. The several counts in the indictment in this case each alleged that the letter or other writing pleaded was sent through the mails in execution of the scheme, and none of the letters or writings affirmatively disclosed on its face that it was wholly unrelated to the execution of the scheme and probably could not have had any effect in the furtherance of it. Whether the letters or writings were mailed with the intent of assisting in the furtherance of the alleged scheme was a question of fact for the jury. Muench v. United States, supra. The case of Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 157 A.L.R. 406, does not aid the defendants. There it was charged that certain checks were sent through the mails for the purpose of executing a scheme to defraud, and it was held under the facts shown at the trial that in each instance the scheme had already reached fruition at the time the mails were used. No fairly comparable facts appear upon the face of the indictment in this case.

It affirmatively appears from the face of the indictment that as to all counts except the eighth and ninth, the letters or other writings were mailed before the defendant The Crummer Company was organized and came into existence. It therefore could not have taken part in the commission of those offenses.

The judgment is affirmed insofar as it dismissed the first, second, third, fourth, fifth, sixth, seventh, tenth, eleventh and twelfth counts in the indictment as to the defendant The Crummer Company. In all other respects the judgment is reversed and the cause remanded with directions to overrule the several demurrers to the indictment.